IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

DAVID POTTER
Plaintiff

vs.    CIVIL ACTION 2:19-cv-00007
    JURY REQUESTED

CARDINAL HEALTH 200, LLC.
Defendant

## PLAINTIFF'S AMENDED COMPLAINT

NOW COMES DAVID POTTER, Plaintiff, and files this, his Amended Original Complaint complaining of CARDINAL HEALTH 200, LLC., Defendant, and in support thereof respectfully show this Court as follows:

### NATURE OF THE CLAIM

1. This an action in brought under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621 et seq. against the defendant, Cardinal Health 200, LLC., Plaintiff alleges that Defendant, CARDINAL HEALTH 200, LLC. (hereafter "Defendant"), violated the Age Discrimination Employment act by terminating the employment of Plaintiff with the defendant because of his age.

2. The plaintiff is an qualified employee who has been denied employment including wages and benefits due him because of the disparate impact and treatment caused by Defendant's age discriminatory practices.

3. Plaintiff brings this cause of action to vindicate his rights. Plaintiff seeks the full measure of available relief, including declaratory, equitable, compensatory and punitive remedies, as well as statutory attorney's fees and costs.

4. Plaintiff also brings this in part for violations of the Fair Labor Standards Act, in that Defendant has failed to pay Plaintiff and others similarly situated for continuous workday activities which are integral and indispensable to their principal activities. For himself the named Plaintiff seeks his unpaid wages, overtime, liquidated damages, all available equitable relief, attorney fees, and litigation expenses/costs, including expert witness fees and expenses

Plaintiff seeks legal and equitable relief for retaliation in violation of section 15(a)(3) and section 16(b) of the FLSA, 28 U.S.C. 215(a)(3) & 216(b).

## II. JURISDICTION AND VENUE

5. Jurisdiction of this Court is invoked pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §621 et seq. Jurisdiction is conferred on this Court by 28 U.S.C. §1331, 29 U.S.C. §216(b) and 28 U.S.C. § 1337

6. Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) inasmuch as the defendant has offices, conducts business, and can be found in the Eastern District of Texas, and the cause of this action has arisen and occurred, in whole or in part, in the Eastern District of Texas.

## III. PARTIES

7. Plaintiff DAVID POTTER is an adult citizen who resides in the Eastern District of Texas. He was an employee of the defendant, located in Jacksonville, Texas.

8. Defendant., CARDINAL HEALTH 200, LLC. is a corporation doing business in the State of Texas. Defendant CARDINAL HEALTH 200, LLC. does business in the Eastern District of Texas and can be served through its attorney of record, Kristin L. Bauer, Attorney at Law, 500 N. Akard, Suite 2500, Dallas, Texas 75201.

IV.

**PROCEDURAL REQUIREMENTS**

9. Paragraphs 1-7 above are incorporated herein by reference.

10. Plaintiff has filed timely complaints with the Equal Employment Opportunity Commission ("EEOC"). On or about December 10, 2018, the EEOC issued Plaintiff's Notice of Right to Sue letters and terminated its investigation of Plaintiffs's claims. Plaintiff has therefore satisfied all prerequisites to suit, and there remain no unfulfilled exhaustion requirements. The document was signed by Brenda F. McCallister on December 10, 2018, with a copy going to Scott Martin, Personnel Manager, 200 McNight St., Jacksonville, Texas 75766. (See Exhibit "A" attached hereto).

**V. STATEMENT OF THE CLAIM**

11. Plaintiff had worked for Defendant for over ten years. Plaintiff worked as mold maker/machinist.

12. Plaintiff is nearly 71 years of age.

13. On or about July 16, 2018, Roy Wright, the supervisor of Plaintiff, gave Plaintiff a home made time sheet to keep track of Plaintiff's hours.

14. 29 C.F.R. Sec. 516.2 sets out the guidelines for what the employer must do to comply to with Fair Labor Standards Act, which includes but is not limited to accurate record keeping. The employer has the obligation to maintain records of the employee's work hours. Defendant attempted to transfer that duty to Plaintiff.

15. To plaintiff's knowledge, he was the only employee at the facility where he was employed that was required to keep track of his hours.

16. On or about August 3, 2018, at approximately 2:30 p.m., Roy Wright brought plaintiff into the conference room, where Roy Wright and others told Plaintiff he did not fill out his time sheets honestly.

17. Plaintiff was told he was not working fast enough, despite having done the job for years.

18. Due to the hostility of Roy Wright and others against him, Plaintiff called corporate, complaining.

20. Roy Wright would often inquire of Plaintiff, when he planned to retire.

21. On or about August 8, 2018, Plaintiff was suspended, shortly after making a complaint to Corporate.

22. On or about August 9, 2018, Plaintiff sends an email to Scott Martin, with copies to Aaron Lewis, and Leslie Tucker as to the reason why he was suspended on August 8, 2018. There was no response to said email. (See Exhibit "B" attached hereto).

23. On or about August 9, 2018, Plaintiff sends an email to Scott Martin, with copies to Aaron Lewis, and Leslie Tucker as to why he was not given any written copies and/or written statements concerning the issues discussed on August 8, 2018. There was no response to said email. (See Exhibit "B" attached hereto).

24. On or about August 9, 2018, Plaintiff sends an email to Scott Martin, with copies to Aaron Lewis, and Leslie Tucker as to the reason why he wasn't given a verbal or written warning. There was no response to said email. (See Exhibit "B" attached hereto).

25. On or about August 9, 2018, Plaintiff sends an email to Scott Martin, with copies to Aaron Lewis, and Leslie Tucker as why the KRONOS records show that Plaintiff's suspension was recorded as an unexcused absence, when the fact was that Plaintiff's badge was pulled and decided that Plaintiff should not be a work that day. There was no response to said email. (See

Exhibit "B" attached hereto).

22. On or about August 9, 2018, Plaintiff sends an email to Scott Martin, with copies to Aaron Lewis, and Leslie Tucker that Plaintiff found it offensive that Roy Wright has questioned Plaintiff several different occasions on when Plaintiff planned to retire. There was no response to said email. (See Exhibit "B" attached hereto).

23. On or about August 9, 2018, Plaintiff sends an email to Scott Martin, with copies to Aaron Lewis, and Leslie Tucker requesting that Plaintiff be furnished with any and all past written or documented verbal warnings that were in his personnel file. There was no response to said email. (See Exhibit "B" attached hereto).

24. On or about August 9, 2018, Plaintiff sends an email to Scott Martin, with copies to Aaron Lewis, and Leslie Tucker to the fact that meetings were result of age discrimination and retaliation by Roy Wright due to a prior complaint against Roy Wright by Plaintiff. There was no response to said email. (See Exhibit "B" attached hereto).

25. On or about August 9, 2018, Plaintiff sends an email to Leslie Tucker, that stated in part "Scott said he was too busy to talk to me early this week. I called him 3 times and left him messages on Mon., Tues., and Wed. morning. (See Exhibit "C" attached hereto).

26. On or about August 10, 2018, Plaintiff sends an email to Doug Condiff, Scott Martin, Leslie Tucker, and Scott Norris that he was ready to return to work as soon as possible. There was no response to said email. (See Exhibit "D" attached hereto).

27. On or about August 16, 2018, at approximately 9:16 a.m., Leslie Tucker sends Plaintiff an email requesting that Plaintiff contact her about the issues that had been raised. (See Exhibit "E" attached hereto).

28. On or about August 16, 2018 at approximately 9:32 a.m. Plaintiff responds to Leslie

Tucker's email stating that he was anxious to get back to work, and that witnesses to interview were Tracy Clements, Larry Tate, Mike Gage, and possibly Ben Poole. (See Exhibit "E" attached hereto)

29. On or about August 27, 2018, Plaintiff sends an email to Aaron Lewis that Leslie Tucker had lost focus about his complaint against Roy Wright based on age discrimination and retaliation, in that a list of non-exempt employees were provided as witnesses, and that none had been contacted. (See Exhibit "F" attached hereto).

30. On or about August 29, 2018, Plaintiff sends an email to Scott Martin about the fact that his time sheet does not show any hours worked for certain periods; that he had not received written information requested weeks ago about Plaintiff's suspension; and that he was singled out because of his age and retaliation for making a previous complaint against Roy Wright. (See Exhibit "G" attached hereto).

31. On or about August 31, 2018, Plaintiff was offered a severance agreement, to which Plaintiff refused to sign and was terminated. (See Exhibit "H" attached hereto).

32. The result of the foregoing employment practice was to deprive Plaintiff of equal employment opportunities because of his age.

33. As a result of defendant's acts or omissions, Plaintiff has been damaged in that he has lost wages and fringe benefits in the past and will, in reasonable probability suffer a loss of future earnings and benefits. Plaintiff has also suffered mental anguish in the past and will, in reasonable probability, suffer mental anguish in the future.

34. Plaintiff would further show that Defendant acted intentionally, maliciously and/or with reckless indifference to the state-protected rights of Plaintiff in discriminating against him and that as a result he is entitled to recover exemplary and/or punitive damages. Plaintiff believes

that exemplary and/or punitive damages in the sum of $250,000.00 would be sufficient to prevent this type of conduct in the future by Defendant and to set an example to others contemplating such conduct.

## FAIR LABOR STANDARDS ACT

35. At all times relevant hereto, Defendant has been an enterprise engaged in commerce and/or in the production of goods for commerce, as those terms are defined by the FLSA. The plaintiff in his job has a mold maker in the took department handled products that were produced in interstate commerce. Defendant had employees who regularly used channels of commerce including but not limited to, processing credit card transactions, making interstate phone calls, using the internet, and handling interstate mail.

36. Upon information and belief, the Defendant, had gross sales or business done in excess of $500,000 annually for the years 2015, 2016, 2017, and 2018.

37. Upon information and belief, the Defendant's gross sales or business done, is expected to exceed $500,000 for the year 2019.

38. At all times relevant hereto, Defendant has been an employer subject to the wage and hour provisions of the FLSA.

39. Plaintiff was employed by defendant for over ten (10) years, and was terminated on or about August 31, 2018.

40. Plaintiff was employed in a position as a mold maker which is not exempt from the requirement that he be compensated for his hours of work by the payment of straight time and overtime. Defendant has repeatedly and consistently failed to pay Plaintiff his overtime wages, which is integral and indispensible to his principal activities in his continuous workday.

41. Plaintiff was paid a hourly wage of nearly $26.88 per hour.

42. Plaintiff does not have access to his time sheets and pay records, and such records are in the control and possession of the Defendant.

43. Plaintiff's normal working hours were from 7:00 a.m. to 3:00 p.m.

44. On certain occasions Plaintiff would show up early to begin working.

45. The document found at Exhibit "H" being the severance agreement proposed by th defendant states in part on page 5, You will have received all medical and other leave time and pay including but not limited to wages, bonuses, commissions, and/or benefits to which You are entitled; (d) You will have been paid for all hours worked."

46. The fact is on August 29, 2018, Plaintiff sends an email to Scott Martin stating in part my time sheet does not show any hours for 8/28 and 8/29.  (See Exhibit "G").  Then two (2) days later Plaintiff is provided a proposed severance agreement that he has been paid for all hours worked, without having received a response to the previous email and/or a copy of his time records.

47. Defendant is a corporation with numerous locations in the United State.

48. Based on a wage of $26.88 per hour x 1.5 hours = $40.32 a week for 128 weeks is $5,160.92 is due and owing, when the records show 1.5 hours a week was not paid.  The 128 weeks is based on wilful finding.    Plaintiff will be able to provide a more accurate record once Plaintiff's records are received from the defendant.

**RETALIATION**

49.  On or about August 29  of 2018, or shortly thereafter, Plaintiff  complained that he was not being paid correctly.   Approximately two days later Plaintiff  was terminated.   Section 15(a)(3) of the FLSA prohibits any "person" from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted . . . any

proceeding under or related to this Act." 29 U.S.C. §215(a)(3).

50. As a result of Plaintiff Polk's retaliation and discharge by the Defendants in violation of section 15 (a)(3) of the FLSA , Plaintiff seeks recovery from Defendant for his lost wages in the past and in the future, compensatory damages as suffered by Plaintiff, and his reasonable and necessary attorney's fees.  Plaintiff additionally seeks an award of punitive damages against Defendants for their intentional act of retaliatory discharge in express violation of section 15(a)(3) of the FLSA.

## DAMAGES

51. Plaintiff would show the court that he has suffered actual damages for lost back wages, insurance benefits, lost future wages, emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life as a direct result of Defendant's discriminatory employment practices described above.

52. Plaintiff would further show the court that he is entitled to recover punitive damages for Defendant's discriminatory employment practices described above which were intentional and malicious acts.

53. Plaintiff is entitled to recover him  reasonable and necessary attorney's fees pursuant to 42 U.S.C. 2000e-5(k).

## ATTORNEY FEES

54. It was necessary for the plaintiff to retain the undersigned attorneys to represent him in prosecution of this suit, plaintiff seek and pray for all reasonable and necessary attorneys' fees and costs of suit in this case which include the following:

(a) Preparation and trial of this lawsuit; and

(b) Post-trial, pre-appeal legal services; and

(c) An appeal to the 5th Circuit Court of Appeals; and

(d) An appeal to the United States Supreme Court in the event that an appeal is necessary; and

(e) Post-judgment discovery and collection in the event execution on the judgment is necessary.

## PRAYER FOR RELIEF

56. WHEREFORE, Plaintiff respectfully request that this court grant the following relief:

(a) Enter declaratory judgment against Defendant and in favor of Plaintiff recognizing that Defendant has violated Plaintiff's rights.

(b) Render and enter a judgment that the acts and practices of Defendant complained of herein are in violation of the laws of the United States and the State of Texas;

(c) Award Plaintiff any past lost wages, including lost fringe benefits and back pay, including, without limitation, any lost benefits that would have otherwise, which resulted from the illegal discrimination;

(d) Award Plaintiff any future lost wages, including lost fringe benefits and future pay, including, without limitation, any future benefits that would have otherwise occurred, had it not been for the illegal discrimination;

(e) Award Plaintiff compensatory and punitive damages;

(f) Award Plaintiff the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees;

(g) Grant an order restraining Defendant from any retaliation against Plaintiff for participating in any manner in this litigation;

(h) Grant Plaintiff such other and further relief as this court finds necessary and proper.

Respectfully submitted,
/s/Bob Whitehurst
Bob Whitehurst
5380 Old Bullard Road, Suite 600, #363
Tyler, Texas 75703
(903)593-5588
State Bar #21358100

## CERTIFICATE OF SERVICE

A true and correct copy of the above and foregoing instrument was forwarded to all attorneys of record by filing this document with the CM/ECF systems for the United States District Court for the Eastern District of Texas on this 19th day of February, 2019.

/s/ Bob Whitehurst
Bob Whitehurst