# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| DAVID POTTER, § | | |
| § | | |
| *Plaintiff*, § | | |
| § | | |
| v. § | CIVIL ACTION NO. 2:19-CV-00007-JRG | |
| § | | |
| CARDINAL HEALTH 200, LLC., § | | |
| § | | |
| *Defendant*. § | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Cardinal Health 200, LLC's ("Cardinal Health") Section 1404(a)&(b) Motion to Transfer Venue (the "Motion"). (Dkt. No. 11.) The Motion seeks an intra-district transfer from the Marshall Division to the Tyler Division. Having considered the parties' briefing and the relevant case law, the Court is of the opinion that the Motion should be and hereby is **GRANTED** to the extent discussed herein.

### I. BACKGROUND

Plaintiff David Potter ("Potter"), who is currently 70 years old, was employed as a mold maker at Cardinal Health's facility in Jacksonville, TX. (Dkt. No. 20 ¶¶ 7, 11, 12.) Cardinal Health terminated Potter's employment on August 31, 2018. (*Id.* ¶¶ 34, 42.)

Potter alleges that Cardinal Health violated the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et *seq.*, by terminating his employment based on his age. (*Id.* ¶ 1.) Additionally, Potter alleges that Cardinal Health violated the Fair Labor Standards Act ("FLSA") by "fail[ing] to pay him . . . for continuous workday activities which are integral and indispensable to [Cardinal Health's] principal activities." (*Id.* ¶ 4.) Potter seeks, inter alia, unpaid

overtime wages for such violation. (*Id.*) Potter also alleges that Cardinal Health retaliated against him in violation of 28 U.S.C. §§ 215(a)(3) and 216(b) of the FLSA. (*Id.*)

**II.     LEGAL STANDARD**

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). This inquiry "appl[ies] as much to transfers between divisions of the same district as to transfers from one district to another." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (internal citation omitted).

In determining whether to transfer venue, the court must first determine "whether the judicial district [or division] to which transfer is sought would have been a district [or division] in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Civil actions under the ADEA and the FLSA may be brought in "a judicial district (1) in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28. U.S.C. § 1391(b); *see also Tucker v. U.S. Dep't of Army*, 42 F.3d 641 (5th Cir. 1994) (applying § 1391 in ADEA case); *Owens v. Neovia Logistics LLC*, No. 4:17-cv-107-ALM, 2017 WL 2813996 at *2 (E.D. Tex. June 29, 2017) (applying § 1391 in FLSA case).

Once this threshold inquiry is met, the court analyzes public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *Volkswagen I*, 371 F.3d at 203. The private factors are "(1) the relative ease of access to

sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen I*, 371 F.3d at 203 (internal citation omitted). The public factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* These factors are decided based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). Though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*Volkswagen II*").

To prevail on a motion to transfer under § 1404(a), the movant must show that transfer is "clearly more convenient" than the venue chosen by the plaintiff. *Id.* at 315. Absent such a showing, the plaintiff's choice of venue is to be respected. *Id.* When deciding a motion to transfer under § 1404(a), the court may consider undisputed facts outside of the pleadings such as affidavits or declarations, but it must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party. *See Sleepy Lagoon, Ltd., v. Tower Grp., Inc.*, 809 F. Supp. 2d 1300, 1306 (N.D. Okla. 2011); *see also Cooper v. Farmers New Century Ins. Co.*, 593 F. Supp. 2d 14, 18–19 (D.D.C. 2008).

"[P]laintiffs are ordinarily allowed to select whatever forum they consider most advantageous (consistent with jurisdictional and venue limitations), [and the Supreme Court has] termed their selection 'the plaintiff's venue privilege.'" *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 635

(1964)). In the Fifth Circuit, the plaintiff's "venue privilege" has been seen as contributing to the defendant's elevated burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *See Volkswagen II*, 545 F.3d at 315; *accord In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009) (applying Fifth Circuit law); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (same). However, "the traditional deference given to plaintiff's choice of forum . . . is less" for intra-district transfers. *Radmax*, 720 F.3d at 289 (2013); *see also Volkswagen II*, 545 F.3d at 313 (explaining that "while a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege").

### III. DISCUSSION

The preliminary inquiry in the § 1404(a) analysis is whether this lawsuit could have been brought in the division to which the movant seeks a transfer. *Volkswagen I*, 371 F.3d at 203. Here, the parties do not dispute that suit could have been brought in the Tyler Division. Accordingly, the Court finds this preliminary inquiry satisfied. The Court now proceeds to analyze the private and public factors considered in determining whether transfer pursuant to § 1404(a) is appropriate.

#### A. **Private Interest Factors**

##### 1. *Relative Ease of Access to Sources of Proof*

When considering the relative ease of access to sources of proof, a court looks to where documentary evidence, such as documents and physical evidence, are stored. *Volkswagen II*, 545 F.3d at 316. For this factor to weigh in favor of transfer, Cardinal Health must show that transfer to the Tyler Division will result in clearly more convenient access to sources of proof. *See Diem LLC v. BigCommerce, Inc.*, No. 6:17-cv-186, 2017 WL 6279907 at *2 (E.D. Tex. Dec. 28, 2017).

4

Cardinal Health argues that since the "facility where Potter worked is in Jacksonville, Texas (74 miles from Marshall; 29 miles from Tyler)," "[d]ocuments and information relevant to Potter's employment with Cardinal Health are in Jacksonville." (Dkt. No. 11 at 2 (citing Dkt. No. 11-1 (Declaration of Timothy Scott Martin on behalf of Cardinal Health); Dkt. No. 11-2 (distance maps to Marshall and Tyler Divisions)).)

Potter argues that "accessibility and location of proof cost is negligible" "due to the increasing ease of communication and transportation and this Court's mandatory disclosure obligations." (*See* Dkt. No. 16 ¶¶ 10, 14.)

Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be a private interest factor to be considered. *See Volkswagen II*, 545 F.3d at 316. Since all of the events giving rise to Potter's ADEA and FLSA claims arose in the Tyler Division[1] and Cardinal Health proffers that all physical evidence is located therein with no rebuttal from or identification of other sources of proof by Potter, the Court finds this factor weighs in favor of the requested intra-district transfer. *See Radmax*, 720 F.3d at 288 ("[T]he question is *relative* ease of access, not *absolute* ease of access.").

2. *Availability of Compulsory Process*

The second private interest factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *In re Volkswagen II*, 545 F.3d at 216. A district court's subpoena power is governed by Federal Rule of Civil Procedure 45. For purposes of § 1404(a), there are three important parts to Rule 45. *See VirtualAgility, Inc. v. Salesforce.com, Inc.*, No. 2:13-cv-00011, 2014 WL 459719 at *4 (E.D. Tex. Jan. 31, 2014) (explaining 2013

---

[1] Even Potter concedes that "[t]he place of the alleged wrong is Cherokee County, Texas"—i.e., in the Tyler Division of the Eastern District of Texas. (*See* Dkt. No. 16 ¶¶ 11.)

5

amendments to Rule 45). First, a district court has subpoena power over witnesses that live or work within 100 miles of the courthouse. Fed. R. Civ. P. 45(c)(1)(A). Second, a district court has subpoena power over residents of the state in which the district court sits—a party or a party's officer that lives or works in the state can be compelled to attend trial, and non-party residents can be similarly compelled as long as their attendance would not result in "substantial expense." Fed. R. Civ. P. 45(c)(1)(B)(i)–(ii). Third, a district court has nationwide subpoena power to compel a non-party witness's attendance at a deposition within 100 miles of where the witness lives or works. Fed. R. Civ. P. 45(a)(2), 45(c)(1).

Cardinal Health argues that "[t]his factor is neutral." (Dkt. No. 11 at 2.) Potter argues that "[s]ome of the witnesses reside in the Eastern District of Texas" and "[t]his Court has subpoena power over those witnesses." (Dkt. No. 16 ¶ 13.) Potter also argues that there are "witnesses in Orlando, Florida, and possibly Ohio." (*Id.*)

All of the events giving rise to this action allegedly occurred at Cardinal Health's facility in the Tyler Division, and thus most, if not all, of the likely witnesses in this case either live or work therein. Since Tyler is within 100 miles of Marshall, "[most] of the likely witnesses in this case are within the subpoena power of either court." *See Radmax*, 720 F.3d at 288. Additionally, to the extent any of the purported witnesses in Florida or Ohio are non-party witnesses, the Marshall and Tyler Divisions likewise have equal subpoena power. As such, the Court finds this factor to be neutral.

### 3. *Cost of Attendance for Willing Witnesses*

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *Genentech*, 556 F.3d at 1343 (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006)). As the Fifth Circuit has emphasized, this factor does not

lose all relevance when the movant seeks to transfer to a venue within 100 miles of the court from which transfer is sought. *Radmax*, 720 F.3d at 288–89. Indeed, the Fifth Circuit recognized that even transfers within 100 miles can impose costs on the witnesses, and that these costs should be factored into the analysis. *Id.* at 289.

Cardinal Health argues that the majority of the witnesses identified in Potter's Amended Complaint "work at the Cardinal Health facility in Jacksonville . . . . [and] live near the Jacksonville facility—which is closer to Tyler than it is to Marshall." (Dkt. No. 11 at 2–3.) Since "Potter took the unusual step of providing a detailed narrative of communications and events that he deems important to his claims" in his First Amended Complaint,[2] "[f]or purposes of the venue transfer analysis, Cardinal Health assumes that what Potter says is true—that these witnesses are indeed important and have material information to offer." (Dkt. No. 18 at 3.) Cardinal Health also argues that "to the extent Potter has identified a witness he believes to be important . . . who is located in Florida, the location of that witness does not tip the scales one way or the other in the transfer analysis." (*Id.* at 3 n.3.) Additionally, Cardinal Health contends that it "is not aware of— nor has Potter identified—any witness who resides in Marshall." (Dkt. No. 11 at 3.)

Potter argues that despite "allegations of certain of [sic] employees that are located in the Jacksonville, Texas area, . . . [t]here is no indication of what their testimony might be." (Dkt. No. 16 ¶ 3.) Potter also argues that there are "witnesses in Orlando, Florida, and possibly Ohio." (*Id.*) Specifically, Potter argues that Yvonne Murray, a labor relations manager at Cardinal Health, is "an important witness [located] in Orlando, Florida," who has "knowledge of any claims filed with the EEOC," including "the charge David Potter filed with the EEOC against Cardinal Health."

---

[2] Having reviewed Potter's First Amended Complaint (Dkt. No. 5) and Second Amended Complaint (Dkt. No. 20), the Court finds that the two complaints are substantially similar, aside from paragraphs detailing a discovery dispute between the parties. (*See* Dkt. No. 20 ¶¶ 52–66.)

7

(*Id.* ¶ 3–4.) Regardless, Potter contends that "[t]he costs of obtaining the attendance of these witnesses would be minimal and would likely involve a few gallons of gas." (*Id.* ¶ 13.) "[T]here [is] no particular reason that certain witnesses could not travel an extra hour to reach the courthouse." (*Id.* 16 ¶ 4.)

On balance, the Court finds that this factor weighs in favor of transfer. The Court notes that the events in this case allegedly occurred at Cardinal Health's facility in Jacksonville, which is closer to Tyler. Most, if not all, of the witnesses likely work or reside in Jacksonville, which would weigh in favor of transfer. Indeed, the parties seem to have identified the same list of witnesses as having knowledge of the facts underlying Potter's ADEA and FLSA claims.[3] However, to the extent that any party "witnesses [are located] in Orlando, Florida, and possibly Ohio,"[4] the relative distances for such witnesses are effectively the same for either the Marshall or Tyler Divisions. (*See* Dkt. No. 16 ¶ 13.)

### 4. All Other Practical Problems

Practical problems include those that are rationally based on judicial economy. Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor of or against transfer. *Eolas Techs., Inc. v. Adobe Sys., Inc.*, No. 6:09-cv-446, 2010 WL 3835762 at *6 (E.D. Tex. Sept. 28, 2010), *aff'd sub. Nom. In re Google, Inc.*, 412 F. App'x. 295 (Fed. Cir. 2011). The Fifth Circuit has clarified that

---

[3] Cardinal Health identifies "Ronald 'Tracy' Clements, Doug Cundieff, Don Gage, Aaron Lewis, Timothy Scott Martin, Bernard Poole, Larry Tate, Leslie Tucker, and Roy Wright" as witnesses. (Dkt. No. 11, at 2–3 (internal footnotes omitted).) Despite some spelling discrepancies, these witnesses correlate with the witnesses identified by Potter in his Second Amended Complaint. (Dkt. No. 20 ¶¶ 25, 29, 31 (identifying "Tracy Clements, Larry Tate, Mike Gage, . . . possibly Ben Poole," "Aaron Lewis," "Doug Condiff, Scott Martin, Leslie Tucker, . . . Scott Norris," and "Roy Wright" as witnesses).)

[4] Potter has not identified any specific witness that may be in Ohio. Even assuming that such a witness exists and has information relevant to this case, the Court's analysis is unchanged.

"the garden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer." *Radmax*, 720 F.3d at 289.

Cardinal Health argues that since "Potter's counsel's address of record lists him as located in Tyler[ and] counsel for [Cardinal Health] is from Dallas," "the Tyler Division is also more convenient for counsel for both parties." (Dkt. No. 11 at 3.) Additionally, "any delay from the transfer will be garden variety, and at this early stage is not prejudicial." (*Id.*)

Potter offers no rebuttal as to the location of counsel; instead, Potter confirms that he "is represented by Bob Whitehurst of Tyler, Texas" and that "Defense counsel is located in Dallas, Texas." (*See* Dkt. No. 16 ¶ 12.) Likewise, Potter does not address whether an intra-district transfer may delay litigation of this case. (*Cf. id.* ¶ 15 ("There is absolutely no proof to show any congestion and/or delay with the Marshall Court.").)

Here, Cardinal Health has identified a "practical problem" based on judicial economy that would make trial of the case in the Tyler Division more expeditious. Potter has not offered a specific rebuttal thereto. Accordingly, the Court finds that this factor weighs in favor of transfer.

B. **Public Interest Factors**

1. *Administrative Difficulties Flowing From Court Congestion*

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor." *Genentech*, 566 F.3d at 1347. Cardinal Health asserts that "[t]his factor is neutral" because it "is not privy to information regarding the relative congestion of the Tyler and Marshall [D]ivisions." (Dkt. No. 11 at 3.) Potter argues that Cardinal Health "has no evidence that suggests that the Marshall Division constitutes a substantial inconvenience by reason of backlog or administrative difficulties." (Dkt. No. 16 ¶ 16.)

Neither party addressed in detail any administrative difficulties flowing from court congestion. Since the Court is "unaware of any [such] difficulties that would arise from transferring or retaining th[e] case," the Court finds this factor is neutral. *Radmax*, 720 F.3d at 289.

### 2. *Local Interest in Having Localized Interests Decided at Home*

The Court must consider local interest in the litigation because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206.

Cardinal Health argues that "[t]he Tyler division has a more local interest in the case than the Marshall division given the location of Cardinal Health and witnesses." (Dkt. No. 11 at 3.) "[G]iven the apparent lack of any connection to [the] Marshall[ Division aside from it being the forum selected by Potter], th[e] [Marshall D]ivision has no local interest in this case." (*Id.* at 3–4.)

Potter argues that Cardinal Health "provides no proof that trying the case in Marshall is a burden upon the community or that the 'burden' of trying the case in Marshall is any more burdensome on the citizens of Tyler or Marshall." (Dkt. No. 16 ¶ 17.) "Jacksonville and Marshall both fall in the Eastern District of Texas." (*Id.* ¶ 18.)

Here, Potter alleges that his injury occurred in Jacksonville, which is in the Tyler Division, and as such, the Tyler Division has more local interest in this case than the Marshall Division. *See Radmax*, 720 F.3d at 289. Ordinarily, this factor would weigh only slightly in favor of a transfer given the deference afforded to plaintiff's choice of venue. *Id.* (internal citation omitted). The Fifth Circuit has noted, however, that "the traditional deference given to plaintiff's choice of forum . . . is less for intra-district transfers." *Id.* (internal quotation marks and citation omitted). This is

10

especially so where there is no nexus between the plaintiff's choice of forum and the parties, witnesses, or facts of the case. *Id.* at 290 (stating that courts are ill-advised to deny transfer "where only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the transferor forum and virtually all of the events and witnesses regarding the case . . . are in the transferee forum") (footnote omitted). Accordingly, the Court finds that this factor weighs in favor of transfer.

### 3. Familiarity of the Forum with the Governing Law

Neither party argues that either the Marshall Division or the Tyler Division lacks familiarity with the law that will govern in this case. The Court finds that both the Tyler and Marshall Divisions are equally capable of applying the relevant law and finds that this factor is neutral. *Radmax*, 720 F.3d at 289.

### 4. Avoidance of Unnecessary Conflicts of Law

Neither party argues that there will be a conflict of laws problem or a problem with the application of foreign law to this case. Accordingly, the Court finds that transfer would not present a conflict of law issue and finds this factor neutral. *Id.* at 289–90.

## IV. CONCLUSION

Upon considering each of the applicable public and private factors related to transfer pursuant to 28 U.S.C. § 1404(a), the Court finds that, on balance, such factors weigh in favor of transfer. "The facts and circumstances of this case are wholly grounded in the transferee forum (the Tyler Division), which is a clearly more convenient venue, and this case has no connection to the Marshall Division." *Id.* Accordingly, Cardinal Health's Section 1404(a)&(b) Motion to Transfer Venue (Dkt. No. 11), on an intra-district basis, is **GRANTED**.

It is hereby **ORDERED** that the above-captioned case is **TRANSFERRED** to the Tyler Division of the Eastern District of Texas. However, notwithstanding the transfer of this case, the undersigned shall remain as the presiding judge herein. The Clerk of the Court shall take such steps as are needed to effectuate this intra-district transfer.

**So ORDERED and SIGNED this 15th day of May, 2019.**

                                              RODNEY GILSTRAP
                                              UNITED STATES DISTRICT JUDGE